Kathleen M. McKENNA, Individually and on Behalf of All the Beneficiaries of John W. McKenna, Deceased

v.

ST. JOSEPH HOSPITAL et al.

No. 87–285–A.

Supreme Court of Rhode Island.

April 20, 1989.

John S. Foley, DeCof & Grimm, Providence, for plaintiff.

Alan R. Tate & Elias, P.C., Inc., David W. Carroll, Roberts, Carroll, Feldstein & Tucker, Inc., Providence, for defendants.

## OPINION

FAY, Chief Justice.

This case comes before us on the plaintiff's appeal and the defendants' cross-appeal of a jury verdict for the defendants. Kathleen M. McKenna, wife of the deceased John W. McKenna, initiated a negligence action, individually and on behalf of all the beneficiaries of John W. McKenna (John), against the physicians and the hospital responsible for the care of her husband on the day of his death. The plaintiff now appeals the favorable ruling on the defendant Dr. Adib Mechrefe's motion in limine and also appeals the restriction of her expert's testimony regarding causation. The defendants cross-appeal the denial of their respective directed-verdict motions and the grant of the plaintiff's motion in limine. The facts relevant to our review are as follows.

On May 9 and 10, 1980, Kathleen M. McKenna noticed that her husband was acting erratically. Because of her concern about confusing statements he was making and the strange behavior he was exhibiting, she suggested that he see a psychiatrist. On May 11 Kathleen called John's father, Jack, as she was very concerned about John's behavior. Early on May 12 when John arrived for work at his father's lumber company, he contacted Dr. Bruno Franek, a psychiatrist, who had treated him in 1972[1] and scheduled an appointment for 8 a.m. of that day.

Doctor Franek testified at trial that at their meeting on the morning of May 12

John told the psychiatrist, "I know that I am God" and "I also know how to go through doors without being seen and without being hurt. I just have to slow my molecules completely down." Doctor Franek determined that the deceased was suffering from "schizophrenic reaction with ideas of reverence-agitation." The doctor prescribed Haldol, which he testified was a major tranquilizer, with five milligrams to be taken immediately. In order to counteract the adverse affects of Haldol, Franek prescribed Artane to be taken in five milligram dosages three times per day. John then took one five milligram dosage of Haldol and left saying he would return at 4 p.m., as ordered by Dr. Franek. After John left his office, Dr. Franek called John's father and discussed his diagnosis of John. John returned to the lumberyard at approximately 10 a.m. and remained there until slightly before noon, when he left unattended.

After John left the lumberyard, what his activities were is not entirely clear. It is certain that at 1:15 p.m. Captain Harold Winstanley and Lieutenant Robert Warren of the Cranston Fire Department rescue squad responded to a call and found John on the sidewalk of Park Avenue near his car, which had two wheels on the curb.[2] Lieutenant Warren and Captain Winstanley testified that John was in a "utopic" or "sluggish" state. Captain Winstanley determined that the best course of action would be to transfer John to St. Joseph Hospital for further observation. The officers proceeded to the hospital with John, arriving there at 1:23 p.m.

At St. Joseph Hospital, John was questioned at about 1:30 p.m. by an admitting nurse, Ann McKenna (no relation), who entered on the admitting report that the patient had stated he had taken one five-milligram dosage of Haldol, one five-milligram dosage of Artane and felt dazed. The patient was then examined by defendant Dr. Mechrefe. After examining John and with

---

1. Doctor Franek was a defendant in this lawsuit. The plaintiff's claim against Dr. Franek was settled prior to the commencement of trial.

2. At the time of the incident, Captain Winstanley was a lieutenant with the Cranston Fire Department and Lieutenant Warren was a private with the same department.

the knowledge that John had told the admitting nurse that he had taken Artane and Haldol, Dr. Mechrefe determined that when the Cranston Fire Department rescue found John at Park Avenue he was at that time suffering from a medication reaction. He told John to call his doctor, adding that if the medicine or dosage needed to be changed, John's doctor would do it, but in the meantime John should continue taking the medication. The examining-room nurse, Diane LeDoux, repeated these instructions to John.

John walked out of St. Joseph Hospital at about 1:45 p.m. He left without any further assistance or instructions other than to contact his doctor and continue taking the medication. Neither Dr. Franek nor any member of John's family were notified. What John's whereabouts were between 1:45 p.m. and 2:40 p.m. is not ascertainable. What is known is that at approximately 2:40 p.m. John jumped off the Broad Street overpass onto Route 95, thereby causing his own death. A postmortem examination of the pill vials in John's pockets established that John had not taken any further medication after being examined at St. Joseph Hospital.

Our initial review of the trial court's decision involves the trial justice's exclusion of statements made by unidentified bystanders to the Cranston rescue personnel who attended to John. Before the trial, defendant Dr. Mechrefe made a motion in limine to exclude any of the proffered testimony. The defendant asserted that statements made by unidentified bystanders to Captain Winstanley and Lieutenant Warren that John was driving erratically and wandering in the middle of Park Avenue immediately prior to the rescue personnel's arrival at the scene were inadmissible hearsay. The plaintiff's counsel, in opposition to defendant Dr. Mechrefe's motion, stated that Winstanley and Warren would testify

that they were informed by unidentified bystanders of John's behavior preceding their arrival. In the alternative, counsel for plaintiff proposed that Winstanley and Warren would testify that upon their arrival at St. Joseph Hospital, they advised the emergency room personnel of the bystanders' statements. The plaintiff's counsel originally argued that although the statements were hearsay within Rule 801 of the Rhode Island Rules of Evidence, they were admissible within the Rule 803(2) or Rule 803(4) exception to Rule 802.

Rule 802, the "hearsay rule," provides a general prohibition against the admissibility of hearsay, except where provided for in the rules. Rule 803(2) is one such exception to Rule 802, removing from the hearsay rule a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. Another exception to Rule 802 is Rule 803(4), which omits from the hearsay rule statements for purposes of medical diagnosis or treatment.[3]

Failing on the argument to have the statements introduced as exceptions to the hearsay rule, plaintiff's counsel then sought to introduce the statements as non-hearsay admissible evidence. He contended that the proposed testimony was not being offered to prove its truth but rather to indicate that Dr. Mechrefe and the emergency room personnel were aware of the content of the statements. After hearing the arguments of counsel, the trial justice ruled favorably on defendant Dr. Mechrefe's motion in limine, denying introduction of the proffered evidence by any witness.

During trial, plaintiff's counsel sought to make an offer of proof with regard to the testimony of Dr. Mechrefe and Lieutenant Warren. Counsel maintained that if permitted, Lieutenant Warren would testify that upon his arrival at St. Joseph Hospital

---

**3.** Rule 803(4) of the Rhode Island Rules of Evidence states:

"*Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, but not including statements made to a physician consulted solely for the purposes of preparing for litigation or obtaining testimony for trial."

he informed hospital personnel of the bystanders' remarks. As for Dr. Mechrefe, plaintiff's counsel asserted that if questioned, Dr. Mechrefe would testify that a nurse at the hospital informed him that John had been found wandering in the street. To bolster his contention of admissibility, counsel resuscitated his argument that the introduction of the statement would be only for the purpose of showing knowledge on behalf of Dr. Mechrefe and the personnel at St. Joseph Hospital. The trial justice expeditiously dismissed the offer of proof, analogizing to his earlier refusal to admit the proposed testimony as inadmissible hearsay.

■ The statements made by the unidentified bystanders to the Cranston rescue personnel and the restatement of these remarks by rescue personnel to emergency room staff of St. Joseph Hospital are both hearsay within Rule 801. Counsel for plaintiff argued clearly that he would use the fact that John had been found wandering in the street to prove a failure by Dr. Mechrefe and St. Joseph Hospital personnel to adhere to the applicable standard of care. As such, the statement that John was wandering in the street before Winstanley and Warren arrived would be hearsay.

Because we determine that both the initial statement and the restatement are hearsay, we focus our inquiry on whether the admissibility requirements for hearsay within hearsay as set forth in Rule 805 are met.[4] Rule 805 provides an exception to the hearsay rule for the unique situation that occurs when a hearsay statement is subsequently restated. Each statement viewed individually must fall within an exception to Rule 802 in order to satisfy the prerequisites of Rule 805.

■ A preliminary examination of Rule 803(4) would be beneficial to our analysis.

Contained within Rule 803 exceptions to the hearsay rule, which make availability of the declarant immaterial, Rule 803(4) was promulgated to allow for the introduction of statements inherently trustworthy because of their nature. The rationale for the exception is "the patient's strong motivation to be truthful about information that will form the basis of his diagnosis and treatment." Rule 803(4) advisory committee's notes. The advisory committee's notes further relate, "The statements do not have to be made to a physician but could be made to any person, such as a *hospital attendant, ambulance driver*, or even a family member, provided they are made for the purpose of diagnosis or treatment." (Emphasis added.) *Id.* The fact that the statement is made to a nonphysician/health-care provider does not detract from its admissibility. As long as the guarantee of trustworthiness inherent in good-faith recitation of symptoms to medical personnel is present, the Rule 803(4) exception to the hearsay rule may be utilized.

Cognizant of the principles embodied in Rule 803(4), we focus our attention on the statements made by unidentified bystanders to Warren and Winstanley. The statement of the symptoms and recent history associated with John W. McKenna on May 12 were given to the rescue personnel with the intent of assisting in his care. At least one observer of Rule 803(4)[5] of the Federal Rules of Evidence has noted, "Nor need the statements refer to the *declarant's* physical condition. Statements relating to someone else's symptoms, pains or sensations would be admissible, provided again, that they were made for purposes of diagnosis or treatment." 4 Weinstein & Berger, *Weinstein's Evidence*, # 803(4)[01] at 803–145 (1985). As factors controlling a court's probative-worth determination of

---

4. Rule 805 states: "Hearsay within hearsay.— Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

5. For purposes of this review, Rule 803(4) of the Federal Rules of Evidence is identical to Rhode Island Rule 803(4). The Federal Rule 803(4) does not contain a prohibition on statements made to a physician consulted solely for the purposes of preparing for litigation or obtaining testimony for trial as does our Rule 803(4), a factor not relevant here.

such a statement pursuant to Rule 403, he cites "[the statement's] significance, its contents, by whom it was made, and in what circumstances it was made * * *." *Id.*

We find that the bystanders' statements come within the exception embodied in Rule 803(4). The statements were made by an individual to emergency personnel with no motive to fabricate or lie, describing with particularity a specific situation. Also, the remarks were made to emergency personnel attending a call for assistance in order to foster treatment. Therefore, the prerequisites of Rule 803(4) have been met, making the statement admissible hearsay.

The next step under Rule 805 is to determine whether the retransmission by Warren to the emergency room staff at St. Joseph Hospital fits within the Rule 803(4) exception to the hearsay rule. As we have stated previously, the fact that the statement does not refer to the declarant's physical condition is not controlling. The crucial factor is that the statement was made to promote the efficient delivery of emergency medical services and was accompanied by indicia of truthfulness. These indicia included the fact that the rescue personnel had no reason to falsify the truth, the fact that they offered the statement to assist in obtaining further medical care, and the fact that they were reciting something recently told to them. Therefore, the statement was admissible under Rule 803(4).

The two-step analysis under Rule 805 requires that we view each of the hearsay statements individually before ruling on the multiple hearsay. In this case both the unidentified bystanders' statements to the Cranston rescue personnel and their restatement to the hospital staff constitute admissible hearsay. The original statement was admissible as an exception to the rule against hearsay under Rule 803(4). The subsequent restatement was also admissible as an exception to Rule 802 under Rule 803(4) and Rule 805. Therefore, we are of the opinion that the exclusion of the proffered evidence was reversible error.

The defendant's cross-appeal in part consists of a contention that the granting of plaintiff's motion in limine constituted reversible error. Prior to trial, plaintiff requested that defendants be prohibited from introducing any evidence, questioning any witness, or mentioning in the jury's presence any of the following:

1. The remarriage of Kathleen McKenna to Jack McKenna.

2. Allegations of an affair between Kathleen McKenna and Jack McKenna, prior to decedent's death, or decedent's awareness of this alleged affair.

3. The relationship between Kathleen McKenna and Jack McKenna after decedent's death.

4. Allegations about the paternity of Jacqueline McKenna, decedent's second daughter.

The trial justice ruled that all this material should be excluded as irrelevant, noting that even if any relevancy could be adduced, it was outweighed by the prejudice that entry of the evidence into trial would cause. The defendants now appeal the trial justice's ruling on those matters.

It is thoroughly settled in this jurisdiction that the admission or exclusion of evidence on grounds of relevancy is within the discretion of the trial justice. *State v. Brennan,* 527 A.2d 654, 656 (R.I.1987); *Peters v. Jim Walter Door Sales of Tampa, Inc.,* 525 A.2d 46, 48 (R.I.1987); *Vucci v. Meyer Brothers Parking System, Inc.,* 494 A.2d 530, 534 (R.I.1985); *Abbey Medical/Abbey Rents, Inc. v. Mignacca,* 471 A.2d 189, 194 (R.I.1984). Absent a showing of abuse of discretion, we will not reverse a ruling on the admissibility of evidence. 471 A.2d at 194.

Applying this standard of review to the facts before us, we hold that the trial justice did not abuse his discretion in granting the plaintiff's motion in limine. The evidence was irrelevant to the determination of the issues, and admission would have only served to obfuscate the true issues. The trial justice's ruling that any potential probative value was outweighed by the danger of prejudice accurately defined the grounds for nonadmissibility. Therefore

we find that such sensational material was properly excluded from entry at trial.

For the reasons stated above, the plaintiff's appeal is sustained, the defendants' cross-appeal is denied, the judgment appealed from is vacated, and the papers of the case are remanded to the Superior Court for a new trial.

WEISBERGER, J., did not participate.