Rose PERRY

v.

Joseph ALESSI, M.D. et al.

No. 2004–18–Appeal.

Supreme Court of Rhode Island.

Feb. 3, 2006.

Carol A. Zangari, Providence, for Plaintiff.

Jason C. Preciphs, Providence, for Dr. Alessi.

Mark Fleury, for East Providence Medical Center.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The defendants, Joseph Alessi, M.D., and East Providence Medical Center/East Providence Medical Center, Inc., appeal from a judgment in favor of the plaintiff, Rose Perry, in this action for medical malpractice. The defendants argue that the trial justice committed three errors of law that warrant reversal of the judgment and remand for a new trial: (1) failure to enter

judgment as a matter of law in the defendants' favor because the plaintiff failed to establish the requisite element of causation; (2) failure to instruct the jury properly on the burden of proof; and (3) failure to allow Dr. Alessi to testify about the opinion of a consulting physician. Additionally, the defendants contend that the jury verdict was excessive. For the reasons herein set forth, we affirm the judgment of the Superior Court.

## Facts and Procedural History

On the morning of August 12, 1997, Mrs. Perry felt stomach discomfort and experienced nausea and vomiting. She was unable to eat or drink, was in intense pain, and could not move her bowels. The condition persisted throughout the day, with acute pain starting in Mrs. Perry's back and moving to the front. Mrs. Perry said that it felt like her insides were coming out. Because her condition did not improve, she decided to seek emergency medical treatment.

Mrs. Perry was driven by a friend to the East Providence Medical Center (the medical center), where she presented herself to Dr. Alessi. After a brief physical examination and urinalysis tests, Dr. Alessi diagnosed Mrs. Perry as suffering from a kidney stone and cystitis.[1] He sent her home with prescriptions to ease the pain and to help pass the stone, and he told her to return the next morning for a follow-up. Mrs. Perry returned to the medical center on the morning of August 13, 1997, feeling worse. When Mrs. Perry reported to Dr. Alessi that her condition had deteriorated, he referred her to Rhode Island Medical Imaging in Barrington for X-rays and complete abdominal ultrasounds. Doctor Alessi sent Mrs. Perry with written instructions to the radiologist to rule out bowel obstruction, abdominal aortic aneurism, and lesions.

According to Dr. Alessi, when Mrs. Perry returned to the medical center with the results of her tests later that day, he reviewed the test results and consulted by telephone with another doctor, Ernest Zuena, M.D., a general surgeon. Saying that he placed "tremendous reliance" on his conversation with Dr. Zuena, Dr. Alessi changed his diagnosis to "probable diverticulitis" with possible kidney stone, cystitis, or even urinary tract infection. Advising her to return the next day, he discharged Mrs. Perry with instructions, according to Dr. Alessi, to telephone Dr. Zuena directly if her condition worsened. That evening, however, Mrs. Perry suffered excruciating pain. Unable to walk, she crawled into the bathroom and vomited a substance that she characterized as feces. An ambulance rushed her to Rhode Island Hospital where she underwent emergency abdominal surgery during which a bowel obstruction was observed. The portion of her bowel where a perforation had occurred was resected.

On August 11, 2000, Mrs. Perry filed this medical malpractice action, naming as defendants Dr. Alessi, the medical center, Rhode Island Medical Imaging, Inc., and Francis Scola, M.D., the physician who conducted the diagnostic testing at Rhode Island Medical Imaging.[2] After a jury trial in October 2003, the jury found that plaintiff had proven by a fair preponderance of the evidence that Dr. Alessi was negligent in his care and treatment of Mrs. Perry, and awarded her $200,000 in dam-

---

1. Cystitis is defined as "[i]nflammation of the urinary bladder." Stedman's Medical Dictionary 450 (27th ed. 2000).

2. At the conclusion of plaintiff's case, the trial justice granted judgment as a matter of law in favor of defendants Dr. Francis Scola and Rhode Island Medical Imaging, Inc.

ages. Judgment was entered on October 28, 2003, in the amount of $322,432.87, from which defendants timely appealed.

## Denial of Motion to Enter Judgment as a Matter of Law

■ The defendants' first argument on appeal is that the trial justice committed reversible error by failing to enter judgment as a matter of law in their favor because plaintiff failed to satisfy her burden of proof on the essential element of causation. The defendants' assertion rests on their contention that plaintiff offered no evidence about when her bowel perforated or how the outcome would have been more favorable if the bowel obstruction had been diagnosed earlier. In denying defendants' motions for judgment as a matter of law, the trial justice ruled that there was sufficient evidence, particularly the expert testimony of Ryan Searle, M.D., from which the jury could infer that Dr. Alessi's failure to diagnose the bowel obstruction caused Mrs. Perry to suffer excruciating pain and resulted in the emergency surgery.

■ "In reviewing a trial justice's decision on a motion for judgment as a matter of law, this Court is bound to follow the same rules and legal standards as govern the trial justice." *Women's Development Corp. v. City of Central Falls*, 764 A.2d 151, 157 (R.I.2001). When presented with such a motion, the trial justice

"considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be

denied, and the issues must be submitted to the jury for determination." *Id.* (quoting *DeChristofaro v. Machala*, 685 A.2d 258, 262 (R.I.1996)).

A judgment as a matter of law should be entered only "when the evidence permits only one legitimate conclusion in regard to the outcome." *Long v. Atlantic PBS, Inc.*, 681 A.2d 249, 252 (R.I.1996).

■ In any negligence action, including medical malpractice, the plaintiff has the burden to establish that the defendant had a duty to act or refrain from acting and that there was a causal connection between his or her breach of that duty and the plaintiff's injury. *See Schenck v. Roger Williams General Hospital*, 119 R.I. 510, 514, 382 A.2d 514, 516–17 (1977). In medical malpractice cases, this Court has held that "[a] physician is not a guarantor of either a correct diagnosis or a successful course of treatment. While there is no duty to cure, a physician is bound to exercise the same degree of diligence and skill as physicians in good standing engaged in the same type of practice * * *." *Sousa v. Chaset*, 519 A.2d 1132, 1135 (R.I.1987) (quoting *Young v. Park*, 417 A.2d 889, 893 (R.I.1980)). We have held that this standard of care is based upon a national, rather than a local, standard. *Sheeley v. Memorial Hospital*, 710 A.2d 161, 167 (R.I.1998).

■ Once a breach of duty is shown, a causal relation must be established by competent evidence. *See Sylvia v. Gobeille*, 101 R.I. 76, 79, 220 A.2d 222, 224 (1966). In most cases proximate cause may be shown by establishing that the harm to the plaintiff would not have occurred but for the defendant's negligence. *Schenck*, 119 R.I. at 514–15, 382 A.2d at 517. However, "[w]here negligent diagnosis is alleged, it has generally been held that the plaintiff must produce testimony from which the jury might infer that prop-

er diagnosis and treatment with reasonable probability would have aided the patient." *Id.* at 517, 382 A.2d at 518. When the only evidence offered by the plaintiff on causation is the testimony of a medical expert, it is well settled that "such evidence must speak in terms of 'probabilities,' rather than 'possibilities.'" *Sweet v. Hemingway Transport, Inc.*, 114 R.I. 348, 355, 333 A.2d 411, 415 (1975). Although absolute certainty is not required, the expert must show that the result "'most probably' came from the cause alleged." *Id.* (quoting *Tabuteau v. London Guarantee & Accident Co.*, 351 Pa. 183, 40 A.2d 396, 398 (1945)). Absent such proof, a jury may not speculate about causation, and a directed verdict for the defendant is warranted. *See Evans v. Liguori*, 118 R.I. 389, 397–98, 374 A.2d 774, 778 (1977).[3]

Here, plaintiff presented Dr. Searle as an expert in emergency medicine. He testified about the standard of care for urgent care physicians, and offered his opinion that Dr. Alessi had not met that standard of care when he misdiagnosed Mrs. Perry's condition. Doctor Searle believed that Mrs. Perry's history and symptoms on August 12, 1997, did not support the kidney stone diagnosis. He noted that the pain and vomiting caused by a kidney stone is "vastly different" from that associated with bowel obstruction, and further opined that Rose Perry did not fit the profile of someone that he would expect to have a kidney stone. Doctor Searle also remarked that Dr. Alessi had not even asked Mrs. Perry about her bowel movements in examining her, which a reasonable emergency physician would have done based on her history and symptoms. In Dr. Searle's opinion, there was "very little to support the diagnosis of a stone and/or cystitis" and "a lot of suggestion that this could be bowel obstruction."

Doctor Searle further testified that a bowel obstruction, if left untreated, could lead to necrosis, or tissue death, and perforation of the bowel. He said that this is exactly what happened to Mrs. Perry, thereby creating a life-threatening situation. Doctor Searle also acknowledged that it was unknown precisely when Mrs. Perry's bowel perforated, and made an "educated guess" that only 5 percent of people with bowel obstructions resolve them without surgery. Nevertheless, he opined there would have been a "different result" if Dr. Alessi had diagnosed her properly on August 12, 1997.

The defendants argued to the trial justice, as they do on appeal, that plaintiff failed to develop the crucial issue of causation with Dr. Searle, thus leaving the jury to speculate about what the "different result" would have been had a bowel obstruction been diagnosed properly on August 12, 1997, when Mrs. Perry first saw Dr. Alessi. In denying defendants' motions for judgment as a matter of law at the close of the evidence, the trial justice suggested that the jurors could infer, in the exercise of their common sense, that Mrs. Perry's bowel perforated at some point between her first visit to Dr. Alessi on August 12, when she was ambulatory, albeit in pain, and August 14, when she was writhing in pain on the bathroom floor, vomiting a "bacterial substance." We agree.

Moreover, Dr. Searle testified extensively on the reasons underlying his opinion that Dr. Alessi had deviated from the standard of care of an urgent care physician by misdiagnosing Mrs. Perry. He further de-

---

**3.** "The standard for granting a motion for judgment as a matter of law is the same as that applicable to its precursor, a motion for a directed verdict." *Mellor v. O'Connor*, 712 A.2d 375, 377 (R.I.1998).

lineated for the jury the natural progression of an untreated bowel obstruction and its life-threatening consequences. Specifically, he testified that a bowel obstruction, if not medically managed, probably will result in bowel perforation caused by necrosis, and peritonitis caused by bacteria getting into the abdominal cavity. The hospital records from Rhode Island Hospital indicated that Mrs. Perry suffered both a perforated bowel and peritonitis.[4] Considering the evidence in the light most favorable to plaintiff, we conclude that there was sufficient evidence from which the jury could infer that Mrs. Perry's injuries most probably were caused by Dr. Alessi's negligence. Accordingly, we conclude that the trial justice committed no error in denying defendants' motion for judgment as a matter of law, and he properly submitted the question of causation to the jury.

## Jury Instructions

■ Next, defendants argue that the trial justice failed to instruct the jury properly on the burden of proof. They contend that although the trial justice informed the jury that the burden was on plaintiff, he erred in not including an instruction that defendants need not prove or disprove anything to win the case.

In charging the jurors, the trial justice informed them that plaintiff had the burden of proof. He went on to explain that this means that when she asserted something, she was under an obligation to prove it. The trial justice reiterated this point a number of times, stressing that plaintiff had the burden to prove each element of negligence to prevail.[5] He also informed the jurors that sympathy or bias has "no business in a jury's deliberation," and that even if the jurors were to find that the doctor did not want anything bad to happen to plaintiff, "that is not a defense either." The defendants contend that this last statement is both perplexing and ambiguous and easily could lead the jury to conclude that defendant had an obligation to disprove that which plaintiff asserted.

We repeatedly have held that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." Super.R.Civ.P. 51(b); *see also Castellucci v. Battista,* 847 A.2d 243, 250

4. Peritonitis is the inflammation of the membrane lining the abdominal cavity. Stedman's Medical Dictionary 1353 (27th ed. 2000).

5. Specifically, the trial justice instructed the jury as follows:
"This is a medical malpractice or medical negligence case. And, the plaintiff, Rose Perry, has the burden of proof. That means she asserts something and it is her responsibility to prove it, and there are certainly things she has to prove if she is to prevail, if she is going to win here. She must prove that the doctor was negligent * * *."
Later, the trial justice reiterated that the burden was on plaintiff with the following words:
"Now, I have spoken of the burden, and what the responsibilities of the plaintiff are of proving the negligence, the causal relationship to any injury, and then, of course, the nature or the value to be placed on pain and suffering.
"In all these instances the burden of proof on the plaintiff is what is called the fair preponderance of the evidence. That simply means the plaintiff must prove her case on the relevant points that I've discussed. She must prove that it is more likely than not, more probable than not. * * * It is simply is it more probable than not, you ask yourself, that [the doctor] deviated from the accepted standards in his field of medicine.
"If he did, he's negligent. If he did not, he's not, and plaintiff cannot prevail."

(R.I.2004). Here, Dr. Alessi filed a request for twenty-seven specific jury instructions. After the trial justice completed his instructions, counsel for Dr. Alessi said, "I don't know if the Court told the jury what would happen if they found the evidence evenly balanced." He then objected to the trial justice's failure to give eleven of his proposed instructions, none of which objections involved the burden of proof.[6] The trial justice did give a supplemental instruction that if the jurors found the evidence in perfect balance then plaintiff had not proved her case. The defendants did not object to such supplemental instruction. Because they did not specifically object to the instruction relative to the burden of proof, however, the issue has not been preserved properly for appellate review. *See, e.g., State v. Grant,* 840 A.2d 541, 546–47 (R.I.2004).

### Statement of Consulting Physician

The defendants' third alleged error on appeal is the trial justice's failure to allow Dr. Alessi to testify about the opinion of Dr. Zuena, a consulting physician. During the trial, Dr. Alessi testified that his conversation with Dr. Zuena was a significant factor leading to his change of diagnosis on August 13, 1997. Before he could testify about what Dr. Zuena allegedly said in this telephone conversation, however, plaintiff objected on hearsay grounds. The trial justice sustained the objection. The de-

fendants now assert, as they did at trial, that the statement made by Dr. Zuena to Dr. Alessi qualified for admission on two grounds. First, they argue the statement does not constitute hearsay because it was not offered for the truth of the matter asserted. Alternatively, they argue that the statement is admissible as a statement made for purposes of medical diagnosis or treatment, thus qualifying as an exception to the hearsay rule under Rule 803(4) of the Rhode Island Rules of Evidence.

■ In reviewing whether the trial justice was correct in excluding this statement, we employ a deferential standard. The admissibility of evidence is a question addressed to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of that discretion. *State v. Andreozzi,* 798 A.2d 372, 374–75 (R.I.2002). We will first address defendants' argument that the statement in question did not constitute hearsay.

■ Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." R.I.R. Evid. 801(c); *See State v. Mann,* 889 A.2d 164, 166 (R.I.2005). The defendants contend that the statement made by Dr. Zuena to Dr. Alessi was not offered for its truth; rather, it was offered merely to show that certain things were said by Dr.

---

6.  Doctor Alessi had proposed the following instructions on the burden of proof:

"1. The burden of proof rests with Mrs. Perry. She must prove her case by a fair preponderance of the evidence (that is the greater weight of the evidence) and, further, she must prove each and every essential element thereof by the same fair preponderance of the evidence.

"2. Dr. Alessi is not required to prove anything. It is Mrs. Perry who has the burden of proof and such a burden always

remains with her and, unless she carries that burden of proof, she is not entitled to a verdict against Dr. Alessi.

"3. Dr. Alessi is under no obligation to disprove that which Mrs. Perry asserts or claims. Rather, Mrs. Perry must affirmatively prove that which she has asserted or claimed." (Citations omitted.)

The defendants failed to raise proposed instructions one through three during their objections, however.

Zuena to Dr. Alessi, who then relied upon that information in the care and treatment of his patient. We conclude, however, that the words spoken by Dr. Zuena in an out-of-court telephone conversation with Dr. Alessi were indeed hearsay. As an offer of proof, defendants suggested that the conversation would show that Dr. Alessi and Dr. Zuena jointly made the diagnosis and jointly made a determination that surgery was not necessary. As the trial justice cogently remarked, however, it appeared as though defendants were attempting "to get in front of this jury some confirmatory observations by a doctor who ha[d] never seen [Mrs. Perry], and that to me offends the hearsay rule." We agree.

If, as defendants contend, the statement was being offered merely to show that an exchange of ideas took place, then defendants achieved that result and the hearsay rule was not violated in their doing so. The testimony of Dr. Alessi that the trial justice did allow established that a conversation took place upon which he placed "tremendous reliance" in changing his diagnosis to "probable diverticulitis." The jurors thus were aware, if they found Dr. Alessi's testimony to be credible, that an exchange of ideas occurred between Dr. Alessi and Dr. Zuena. In our view, however, defendants were seeking to place before the jury the specific substance of Dr. Zuena's opinion in a manner that would not permit plaintiff to cross-examine him. We are satisfied that the actual words uttered by Dr. Zuena in the conversation indeed constituted hearsay evidence.[7]

We next assess whether the statement was nonetheless admissible as an exception to the rule against hearsay evidence. The defendants contend that the applicable exception is found in Rule 803(4), which provides:

"*Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, but not including statements made to a physician consulted solely for the purposes of preparing for litigation or obtaining testimony for trial."

The rationale for this exception is "the patient's strong motivation to be truthful about information that will form the basis of his diagnosis and treatment." *McKenna v. St. Joseph Hospital,* 557 A.2d 854, 857 (R.I.1989) (quoting Advisory Committee's Note to Rule 803). "[R]eliability is assured by the likelihood that the patient believes that the effectiveness of the treatment depends on the accuracy of the information provided to the doctor * * *." 2 *McCormick on Evidence* § 277 at 233 (John W. Strong, 5th ed. 1999).

We are satisfied that the trial justice's decision to exclude Dr. Alessi's testimony of Dr. Zuena's statement was a sustainable exercise of his discretion. The hearsay exception embodied in Rule 803(4) is predicated upon the presence in a particular case of sufficient "circumstantial guarantees of trustworthiness." Advisory Committee's Note to Rule 803. While a statement need not be made to a physician to fall within the exception of Rule 803(4), it must be "reasonably pertinent to diagnosis

7. This situation is distinguishable from those several situations in which the substantive truth of the out-of-court statement is not the focus, but rather the fact and effect of the out-of-court statement constitute the focus. *See,* e.g., *State v. Crow,* 871 A.2d 930, 936 (R.I. 2005); *Wells v. Uvex Winter Optical, Inc.,* 635 A.2d 1188, 1193 (R.I.1994); *In re Jean Marie W.,* 559 A.2d 625, 629 (R.I.1989).

or treatment." Advisory Committee's Note to Rule 803. Although we have no reason to question Dr. Zuena's credibility, he had no personal knowledge of Mrs. Perry's condition. Rather, his comments and opinions expressed to Dr. Alessi necessarily were based entirely on information that Dr. Alessi provided to him. His statement simply lacks the "circumstantial guarantees of trustworthiness" that undergird this exception to the hearsay rule.

Moreover, defendants' reliance on our decision in *McKenna* is misplaced. In *McKenna*, 557 A.2d at 857–58, this Court held that statements made by unidentified bystanders to rescue workers about the victim's actions, and such statements when repeated to hospital personnel by the rescue workers, were excused from the hearsay rule under Rule 803(4). We reasoned that the statements were made to emergency personnel by persons "with no motive to fabricate or lie, describing with particularity a specific situation" in order to foster the victim's treatment. *McKenna*, 557 A.2d at 858. Therefore, we held that the statements had sufficient indicia of truthfulness to be admitted under the rule. *Id.* We noted that "[a]s long as the guarantee of trustworthiness inherent in good-faith recitation of symptoms to medical personnel is present, the Rule 803(4) exception to the hearsay rule may be utilized." *McKenna*, 557 A.2d at 857.

In *McKenna*, we also endorsed the admissibility of the rescue personnel's retransmission of the bystanders' statements to hospital emergency room staff. Again, we held such statements to be accompanied by indicia of truthfulness, specifically "the fact that the rescue personnel had no reason to falsify the truth, the fact that they offered the statement to assist in obtaining further medical care, and the fact that they were reciting something recently told to them." *Id.* at 858.

However, *McKenna* is distinguishable from the case at bar. Unlike the statements made by the bystanders in the *McKenna* case, Dr. Zuena was not a first-hand observer of Mrs. Perry's medical condition; nor was he simply relaying statements "describing [Mrs. Perry's] medical history, or past or present symptoms, pain, or sensations." Rule 803(4). We believe there to be a fundamental difference between statements describing a patient's condition, symptoms, or history made for the purpose of fostering treatment, and statements made by a consulting physician with no personal knowledge of the patient's condition or history. Although made for the purposes of medical diagnosis and treatment, such latter statements lack the guarantees of trustworthiness inherent in the former. Moreover, in this case, Dr. Zuena's statement was being offered by Dr. Alessi in his own defense. The objective circumstances here are perhaps more suspect than they are conducive to guarantees of trustworthiness.

### Award of Damages

The defendants' final contention on appeal is that the jury verdict was excessive in light of plaintiff's short period of pain and suffering. This Court has not adopted a mathematical formula for the computation of damages for pain and suffering. *See, e.g., Tilley v. Mather,* 84 R.I. 499, 501–02, 124 A.2d 872, 874 (1956). "The establishment of the amount to be awarded for such damages has always been left, under proper instructions, to the discretion of the jury." *Id.* at 502, 124 A.2d at 874. "It has been our policy to allow the jury substantial latitude in computing the amount to be awarded as damages for pain and suffering and to reduce the jury's verdicts in this respect only when it appears that they are grossly excessive." *Id.* Grossly excessive means that "a demonstrable disparity" exists between

the amount awarded and the amount of pain and suffering shown to have been endured. *Id.* It is the duty of the trial justice to reduce the jury's verdict if such a disparity exists. *Id.* "[U]nless the verdict with respect to [ ] pain and suffering is such as to shock the conscience and to strongly suggest that the jury was influenced by passion or prejudice or that it proceeded upon some erroneous basis in ascertaining the amount of the award, a court will not interfere with the amount set out in the verdict." *Ruggieri v. Beauregard*, 110 R.I. 197, 201, 291 A.2d 413, 415 (1972). If a trial justice has followed these guidelines, "we shall give great weight to their decisions concerning the adequacy of a jury's award." *Silva v. Spooner*, 692 A.2d 336, 336 (R.I.1997).

In this case, the trial justice denied the defendants' requests for a remittitur. In so doing, he apparently decided that the award was not grossly excessive and that no demonstrable disparity existed between the amount awarded and Mrs. Perry's pain and suffering. *See Gordon v. St. Joseph's Hospital*, 496 A.2d 132, 138 (R.I.1985). Nothing in the record suggests that the trial justice clearly was wrong. He gave the jurors proper instructions on how to compute damages for pain and suffering, and their award of $200,000 for pain and suffering does not appear to be grossly excessive in light of the intense and increasing pain, emergency surgery, and substantial subsequent period of recovery that Mrs. Perry established as her damages. Additionally, the award does not appear to be conscience shocking or to have been guided by prejudice or other erroneous basis. Accordingly, we conclude that there is no reason for us to disturb the jury's verdict.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court, to which court this record shall be remanded.