DECISION
Before this Court are a motion for a new trial and a renewed motion for judgment as a matter of law. This is a medical malpractice action brought by George Picotte ("plaintiff") against Alexander Calenda ("defendant"). The case was tried before a jury, and a verdict was rendered on March 21, 2006 in favor of plaintiff. Jurisdiction is pursuant to Super. R. Civ. P. Rules 50 and 59.
 FACTS AND TRAVEL
In September 1995, plaintiff presented to defendant, a Rhode Island-licensed eye physician and surgeon, with complaints of double vision. On December 4, 1996, defendant performed cataract surgery and intraocular lens implantation on plaintiff's right eye. Subsequently, plaintiff began experiencing double vision and other, similar impairments. Plaintiff discussed these problems with defendant, as well as with two other doctors. Defendant suggested at that time that the lens utilized in the initial surgery may have been too small. Plaintiff then underwent a second operation on September 3, 1997: an intraocular lens exchange that appeared to resolve successfully the persisting visual impairments.
Thereafter, in October 1998, plaintiff returned to defendant's office complaining of decreased vision in his right eye. Defendant examined the patient and diagnosed a secondary membranous cataract. Defendant performed a Yag laser capsulotomy, and plaintiff's vision was corrected to 20/20 as a result.
In December 1998, plaintiff was examined for cataract evaluation of his left eye by Charles Calenda, defendant's nephew and business partner. Approximately two months later, on January 20, 1999, Charles Calenda performed left eye cataract surgery and lens implantation that was uneventful.
In February 1999, plaintiff again returned to defendant's office, this time complaining again of decreased vision in his right eye. At that point, he was diagnosed with a retinal detachment and was referred to a specialist. Plaintiff underwent a scleral buckle and vitrectomy OD for a pseudophakic macula of retinal detachment in his right eye. That operation required multiple follow-up appointments with the specialist who performed the surgery. A number of post-surgical complications — including anterior segment inflammation, cystoid macular edema that necessitated an aggressive eye drop regimen, and, ultimately, a second detached retina — ensued.
On December 2, 1999, plaintiff filed the instant action against defendant alleging damages stemming from defendant's negligence and failure to provide informed consent in connection with the cataract surgery performed on December 4, 1996. (Compl. Count I ¶ 7, Count II ¶ 8.) Following a trial on the merits, the jury returned the following verdict: plaintiff had proven, by a fair preponderance of the credible evidence, that defendant was negligent on December 4, 1996 and that defendant's negligence was a proximate cause of the need to have the September 3, 1997 surgery. The jury also found that plaintiff had not proven, by a preponderance of the evidence, that defendant's negligence was a proximate cause of the retinal detachments of February and March 1999. Given these findings, the jury awarded plaintiff damages in the amount of $250,000. Thereafter, defendant timely filed the instant motions.
 STANDARD OF REVIEW
With respect to a motion for judgment as a matter of law, "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party." Super. R. Civ. P. Rule 50(a)(1). Furthermore,
 "[w]henever a motion for a judgment as a matter of law made at the close of all the evidence is denied . . . the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment." Id. at 50(b).
Our Supreme Court has consistently held that a trial justice, when considering a motion for judgment as a matter of law, "must examine `the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses . . . drawing from the record all reasonable inferences that support the position of the nonmoving party." Children's Friend Serv. v. St. Paul Fire Marine Ins.Co., 893 A.2d 222, 226 (R.I. 2006) (quoting Marketing DesignSource, Inc. v. Pranda North Am., Inc., 799 A.2d 267, 271 (R.I. 2002)) (citation omitted). Thereafter, "`[i]f . . . there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied.'" Id. at 227 (quoting Wellborn v. Spurwink/RhodeIsland, 873 A.2d 884, 887 (R.I. 2005)) (citation omitted).
A motion for a new trial entails a slightly different standard of review. Relative to the motion for a new trial, the Superior Court Rules of Civil Procedure provide the following directive:
 "[a] new trial may be granted to all or any of the parties and on all or part of the issues, (1) in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of this state." Super. R. Civ. P. Rule 59(a).
When reviewing such a motion, the trial justice functions as a "super juror." Long v. Atlantic PBS, Inc., 681 A.2d 249, 252
(R.I. 1996) (citing Barbato v. Epstein, 91 R.I. 191, 193-94,196 A.2d 836, 837 (1964)). As such,
 "a trial justice sits as the super [seventh] juror and is required to independently weigh, evaluate, and assess the credibility of the trial witnesses and evidence. If the trial justice determines that the evidence is evenly balanced or is such that reasonable minds, in considering that same evidence, could come to different conclusions, then the trial justice should allow the verdict to stand. . . . [The trial justice's] decision will be accorded great weight and will be disturbed only if it can be shown that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." Martinelli v. Hopkins, 787 A.2d 1158, 1165 (R.I. 2001) (citing Graff v. Motta, 748 A.2d 249, 255 (R.I. 2000)) (citation omitted).
If a party brings both a renewed motion for judgment as a matter of law and a motion for a new trial simultaneously — as defendant has done herein — the Rules provide that
 "[a] motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law." Super. R. Civ. P. Rule 50(b).
 MOTION FOR A NEW TRIAL
Defendant avers that the jury verdict rendered in this case was contrary to the law and to the weight of the evidence and that the award was excessive to the point of shocking the conscience. Moreover, defendant maintains that the trial justice committed errors of law in connection with evidentiary rulings and with jury instructions. Consequently, defendant claims that a new trial is warranted. For the reasons set forth below, defendant's motion is denied.
 Standard of Care
Defendant requests that this Court grant its motion for a new trial because the weight of the evidence demonstrates that he did not deviate from the accepted standard of care in his treatment of plaintiff. Defendant refers the Court to the testimony of his experts, both of whom determined that the implanted lens was commonly used with highly myopic patients such as plaintiff. Sitting as a "super juror," this Court has reviewed all of the evidence and weighed the credibility of the witnesses. The jury determined that defendant negligently performed the December 4, 1996 operation and that his negligence was the proximate cause of personal injuries sustained by plaintiff, including having to undergo a second operation on September 3, 1997. The jury was reasonable in its determination; its verdict was responsive to the evidence, and the award sensible.
In support of his contention that the jury's verdict was against the weight of the evidence, defendant refers to the testimony of his expert witnesses. Peter Brasch ("Brasch"), an ophthalmologist, testified that defendant chose the appropriate power and appropriate size of lens for the procedure in question, thereby complying with the accepted standard of medical care. Similarly, George Shafranov ("Shafranov"), also an ophthalmologist, testified that, as of December 1996, the lens utilized by defendant met the standard of care. While the Court is mindful of the aforesaid testimony supportive of defendant's position, the Court is also aware that the record contains copious testimonial evidence supporting the conclusion that defendant's actions constituted a deviation from the accepted standard of care.
For example, the jury heard the testimony of Philip Shelton, ("Shelton"), a licensed ophthalmologist, who stated that defendant's treatment of plaintiff in December 1996 did not comport with the standard of care of a reasonably competent ophthalmologist. Notably, Shelton testified that defendant failed to take into account the length of the eye, and therefore, the lens placed in the eye was improperly sized and off-centered. Furthermore, on cross-examination Brasch acknowledged that the September 3, 1997 surgery was necessary because the lens implanted on December 4, 1996 was too small for the section within the eye in which the lens was located. Accordingly, Brasch testified that measuring the size of the lens relative to the size of the patient's eye would have been standard to a lens implantation procedure.
In addition, Shafranov conceded on cross-examination that the standard of care in the relevant time period for conducting an intraocular lens exchange involved three steps: keratometry, ultrasound, and slit lamp evaluation to measure the pupil size.[1] Thus, it would have been reasonable for the jury to infer that defendant's failure to undertake such measures represented negligence in this instance. Moreover, this Court finds Shafranov's testimony, by and large, to have been less than credible.[2] Barbato, 97 R.I. at 193-94, 196 A.2d at 837
(citing Somerset Realty Co. v. Shapiro, 51 R.I. 417, 420,155 A. 360, 362 (1931)) (a trial justice "can accept some or all of the evidence as having probative force; or can reject some of the testimony because it is impeached or contradicted by other positive testimony or by circumstantial evidence, or because of inherent improbabilities or contradictions which alone or in connection with other circumstances satisfies [the trial justice] of its falsity").
Given the above testimony, it was reasonable for the jury to conclude that defendant's failure to measure plaintiff's pupil size constituted a deviation from the standard of care. Consequently, the evidence is such that, at the least, reasonable minds could come to different conclusions. Gardiner v. Schobel,521 A.2d 1011 (R.I. 1987); Bouley v. Gigney, 113 R.I. 522,324 A.2d 318 (1974). Accordingly, this Court finds that the verdict corresponds to the merits of the case and is not against the fair preponderance of the evidence.
 The Verdict
Defendant also moves for a new trial on the ground that the damages awarded by the jury's verdict were excessive in view of the evidence presented. The jury awarded plaintiff damages in the amount of $250,000. Defendant argues that the amount awarded was not commensurate with the evidence presented at trial. Specifically, defendant notes the lack of testimony relating to any pain or discomfort by plaintiff with respect to the December 4, 1996 surgery and the fact that plaintiff never missed any work due to his injuries. Plaintiff, on the other hand, argues that the damage award was appropriate in light of evidence that established defendant's negligence as the `but for' cause of years of continual complaints and treatments, including the detached retina.
Our Supreme Court has resolved that
 "`a damage award may be disregarded by the trial justice and a new trial granted only if the award shocks the conscience or indicates that the jury was influenced by passion or prejudice or if the award demonstrates that the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled." Shayer v. Bohan, 708 A.2d 158, 165 (R.I. 1998) (quoting Hayhurst v. LaFlamme, 441 544, 547 (R.I. 1982)) (citation omitted).
In observance of the above, Rhode Island has adopted a policy of "`allow[ing] the jury substantial latitude in computing the amount to be awarded as damages for pain and suffering and to reduce the jury's verdicts in this respect only when it appears that they are grossly excessive.'" Perry v. Alessi,890 A.2d 463, 472 (R.I. 2006) (quoting Tilley v. Mather, 84 R.I. 499,501-02, 124 A.2d 872, 874 (1956)). A verdict is deemed to be grossly excessive when there exists a "demonstrable disparity" between the amount of the award and amount of pain and suffering shown at trial. Id.
The instant verdict neither shocks the conscience nor is it shockingly disparate from the damages proven at trial. The evidence reveals that plaintiff suffered through approximately nine months of blurred or double vision in his right eye before undergoing a second lens implantation in September 1997. Furthermore, the jury had before it evidence that plaintiff endured decreased vision and, eventually, a detached retina subsequent to the second operation. This Court does not believe that a "demonstrable disparity" exists between plaintiff's pain and suffering and the award. In fact, the plaintiff was understated in his testimony and the jury responded, appropriately, in kind. As such, this Court does not find that the verdict shocks the conscience. It was perfectly appropriate.
 Assumption of Risk
Additionally, defendant maintains that its motion for a new trial should be granted because the Court committed a legal error when it precluded defendant's expert from answering a question concerning the causal relationship between the retinal detachments and plaintiff's failure to seek prompt treatment. Defendant asserts that said testimony was relevant to plaintiff's comparative negligence and assumption of risk, both affirmative defenses raised in defendant's answer. Moreover, defendant avers that this Court's refusal to include said issues in its jury instructions also constitutes error warranting a new trial.
It is axiomatic that absent express indication to the contrary, a patient receiving medical care does not assume the risk of general negligence. See Owens v. Silvia, 838 A.2d 881, 903
(R.I. 2003) ("[t]he affirmative defense of assumption of the risk requires the defendants to `show that the party who is alleged to have assumed the risk [had] . . . actual knowledge of the precise risk before electing to encounter it.'") (citations omitted);see also Hennessey v. Pyne, 694 A.2d 691, 700 (R.I. 1997) (quoting William L. Prosser, Handbook of the Law of Torts § 68 at 451 (4th ed. 1971)) ("plaintiff is not required to surrender a valuable legal right . . . merely because the defendant's conduct has threatened him [or her] with harm if the right is exercised"); Ferguson v. Marshall Contractors., 644 A.2d 310,310 (R.I. 1994) (quoting Rickey v. Boden, 421 A.2d 539, 543
(R.I. 1980)) (affirming trial justice's refusal to instruct jury on assumption of risk because "`[i]n the absence of an express agreement, an individual does not assume the risk of harm arising from another's conduct unless he knows of the existence of the risk and appreciates its unreasonable character'"). Therefore, because defendant failed to show that plaintiff had knowledge of any precise risk or that the patient's timeframe for seeking treatment for his detached retina was relevant to comparative negligence, it was not error for this Court to preclude the aforesaid testimony. Furthermore, even without such testimony, the jury returned a verdict finding defendant liable only in connection with the negligence claim and not the informed consent claim. Accordingly, this Court finds no error in its preclusion of said testimony from the jury and this Court's jury instructions.
 Pain and Suffering and Permanent Injury
Defendant argues that this Court erroneously charged the jury on pain and suffering and permanent injury despite the absence of evidence to support such instruction Said instruction, defendant therefore maintains, constitutes an error of law warranting a new trial.
A review of the record, however, reveals ample evidence to sustain this Court's instruction, and upon which the jury could reasonably have inferred permanent pain and suffering. The jury heard defendant's own expert, Brasch, testify that a permanent scleral buckle was placed around plaintiff's eye to protect the eye against further traction. Brasch explained that such a procedure requires an incision be made on the outside of the wall of the eye which causes a scar to form thereby enabling the hole to remain closed. Additionally, the medical records in evidence support the charges relative to pain and suffering. For example, a post-operative note following the retinal reattachments references the scleral buckle and states that "his vision is still suboptimal in his right eye. (May 24, 1999 Post-Operative Consult.) Another record provides that plaintiff "continues to be discouraged with his vision. As far as he is concerned, [the surgery] did not help at all." (Oct. 1, 1999 Ophthalmology Consult.) Similarly, at a follow-up appointment in June of 2000, plaintiff indicated that he was "still aware of some slight distortion in the right eye." (June 26, 2000 Ophthalmology Consult.) It is well-established that "pain and suffering may be compensable even in the total absence of direct proof of their existence, since the fact of physical injury alone may warrant an inference of pain and suffering." 1 Damages in Tort Actions, § 4.02[3][a][ii] at 4-24.1. Accordingly, this Court does not find it has made an error of law with respect to its jury charge on pain and suffering.
 RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
In addition to its motion for a new trial, defendant renews its motion for judgment as a matter of law . When presented with such a motion, this Court will
 "`consider the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party. . . . If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied.'" Perry v. Alessi, 890 A.2d 463, 467 (R.I. 2006) (quoting Women's Development Corp. v. Central Falls, 764 A.2d 151, 157 (R.I. 2001)) (citation omitted).
In this case, the jury heard conflicting expert testimony regarding the standard of care; that defendant's actions met the standard of care and that defendant's actions constituted a deviation from that standard. Defendant's experts testified that the lens used by defendant was approved for use in highly myopic patients such as plaintiff. On the other hand, plaintiff's expert testified that the standard of care called for defendant to measure plaintiff's pupil relative to the lens being implanted. The jury also heard one of the defense experts agree that the standard necessitated measuring of the lens and of the pupil. Therefore, considering all of the evidence in favor of plaintiff, this Court concludes that factual issues existed before the jury "upon which reasonable persons might draw different conclusions." Consequently, defendant's renewed motion for judgment as a matter of law is denied.
 CONCLUSION
For the aforementioned reasons, this Court denies defendant's motion for a new trial and its renewed motion for judgment as a matter of law. The facts of this case were such that reasonable persons could have drawn conflicting inferences regarding defendant's negligence and the amount of damages stemming therefrom. Accordingly, the jury's verdict responds to the merits of the underlying dispute and administers substantial justice. Furthermore, the Court finds no error of law with respect to its evidentiary rulings and its jury instructions. Counsel shall submit an appropriate order for entry.
[1] At his January 21, 2004 deposition, Charles Calenda testified that the standard procedure in treating a patient presenting with the symptoms such as plaintiff had would be threefold: performing both a keratometry and an ultrasound and evaluating the pupil to determine the appropriate lens size. At trial, upon cross-examining Shafranov, plaintiff's counsel read the aforementioned section of Charles Calenda's deposition transcript and the witness agreed with the testimony. See
Super. Ct. R. Civ. P. 32(a)(1) ("[a]ny deposition may be used by any party for the purposes of contradicting or impeaching the testimony of deponent as a witness, or for any other purpose permitted by the Rhode Island Rules of Evidence"); see alsoState v. Crowhurst, 470 A.2d 1138, 1143 (R.I. 1984) (citation omitted) (permitting on cross-examination a line of questioning designed "to explain, contradict, or discredit any testimony given by the witness on direct examination or to test his accuracy, memory, veracity, or credibility").
[2] Particularly, plaintiff's counsel read to Shafranov certain statements regarding the standard of care and asked the witness whether he agreed with those statements. Before he responded to the question, Shafranov asked plaintiff's counsel to clarify exactly who had made those statements, thereby implying that his response was dependant on the identity of the declarant. In fact, Shafranov's tone was emphatic. Whether the quotation cited was made by Dr. Alexander Calenda or Dr. Charles Calenda was determinative of how Shafranov was going to answer the question. This type of exchange with Shafranov happened twice. This expert would have gone to the highest bidder. It was the most memorable portion of the trial. It resonated. The Court finds that such vacillation and disingenuousness renders the witness' responses unreliable.