MURDOCK, Justice.
Darren Woods and his half sister Joni Wood,[1] appeal separately from a judgment based on a jury verdict in favor of Karrie Hayes and against Joni in the amount of $437,761.52 and against Darren in the amount of $86,540.49 for violating the Alabama Uniform Fraudulent Transfer Act, § 8-9A-1 et seq., Ala.Code 1975 (“AUFTA”). We have consolidated the two appeals for the purpose of writing one opinion. In both appeals, we reverse and remand.

I. Facts and Procedural History

On the morning of September 28, 2004, Karrie Hayes, then age 14, was alone inside the house where she resided with her mother in Florence. Jason Earl Pruitt, at the request and under the direction of Stevie Woods,[2] the father of Darren and Joni, released a large amount of propane gas into the residence and then ignited the gas, causing the residence to explode into flames.[3] Hayes was thrown from the house into the front yard. As a result of the explosion, Hayes sustained severe burns to over 70 percent of her body.
Investigators quickly learned of Pruitt’s involvement, and Pruitt thereafter implicated Stevie Woods. Officer Travis Clemmons, chief investigator for the Lauderdale County Sheriffs Department, confronted Stevie Woods the day after the accident. Officer Clemmons testified at trial that Woods appeared visibly shaken when he was told that someone was in the house when it was set ablaze.
On January 27, 2006, Stevie Woods was arrested and charged with arson for the burning of the residence in which Hayes was living. Both Stevie Woods and Pruitt were convicted of arson in the first degree on November 8, 2006. The Court of Criminal Appeals affirmed Woods’s conviction in an unpublished memorandum on November 6, 2009, Woods v. State (No. CR- *865 06-1150), 64 So.3d 1150 (Ala.Crim.App.2009) (table), and this Court denied his petition for a writ of certiorari on February 12, 2010, Ex parte Woods (No. 1090391), 76 So.3d 876 (Ala.2010) (table). Darren and Joni were not implicated in the crime.
As a result of the injuries she sustained in the explosion, Hayes was placed in a medically induced coma from which she awoke after a month and a half. She stayed in the hospital for approximately two and a half months and underwent 12 surgeries during that period. Most of the surgeries were for skin grafts to cover the burned areas of Hayes’s body. Hayes also had to undergo extensive physical therapy. Hayes’s treating physician, Dr. William Hardin, then chief surgeon in the burn unit at Children’s Hospital of Alabama, testified by video deposition at trial that Hayes “will require ongoing lifetime care. She will not be normal. She will suffer the effects of this through her entire life. It will effect her not only physically but emotionally, psychologically. Her life is changed forever.”
On September 20, 2006, Hayes, through her mother, filed a civil action against Stevie Woods and Pruitt seeking damages for the injuries she sustained as a result of the destruction of the residence.[4] In amended complaints filed on May 7, 2007, and September 29, 2008, Hayes added claims alleging the fraudulent transfer of assets against Stevie Woods, Darren, Joni, and Flower Wood Development, LLC (“Flower Wood”), and conspiracy to engage in the fraudulent transfers and seeking injunctive relief to bar further transfers. With regard to these claims, Hayes specifically alleged that, with the knowledge of the existence of Hayes’s claims against him, Stevie Woods fraudulently transferred real and personal property to various relatives,[5] including Darren and Joni, as well as to Flower Wood.
Pursuant to Rule 42, Aa. R. Civ. P., Darren and Joni filed a motion requesting that the claims against them related to the alleged fraudulent transfers be tried separately from the personal-injury claims filed against Stevie Woods and Pruitt. One of the stated grounds for separate trials was that
“[i]t is anticipated that photographs of the Plaintiff, Karrie Hayes, medical testimony concerning the condition of Kar-rie Hayes, testimony of Karrie Hayes describing her injuries and condition, her pain and suffering and her other damages and injuries will be elicited at the trial of the case.
“The testimony and evidence described above will prejudice the Defendants in the fraudulent conveyance claims which said prejudice will not be able to be cured by any instruction the Court may give to disregard that evidence on damages when deciding issues in the fraudulent conveyance case.
“All the proof about Karrie Hayes’s damages [is] not admissible to prove any elements of the claims concerning fraudulent conveyances.”
Darren and Joni later filed a supplement to their motion for separate trials in which they contended that “[t]he motive and intent of [Hayes] in offering photographs *866 and other [evidence] of serious injury is to inflame the jury in their favor and appeal to the jury’s sympathy.” They attached to the supplement an affidavit from David Odem, cocounsel for Stevie Woods in the criminal action against him resulting from the incident. In the affidavit, Odem stated that “[t]he photographs of Karrie Hayes were gruesome, awful, horrible. In fact, I cannot think of adequate words to describe how bad they were.”
The trial court subsequently ordered bifurcated trials for the claims in Hayes’s complaint. The first trial would address Hayes’s claims for “damages for acts relating to the explosion and fire made the basis of this litigation.” The second trial would address “[a]ll issues related to fraudulent conveyances.”
In the same order, the trial court found that Stevie Woods’s “willful, improper and contemptuous refusal to give deposition testimony has prevented [Hayes] from obtaining testimony and evidence necessary for the adequate prosecution of [her] case” and that Woods had “continued to exhibit a pattern and practice of willful disobedience to the Rules of Civil Procedure and to Orders of this Court.” As a result of Stevie Woods’s lack of cooperation, the trial court ruled that all of Hayes’s facts concerning her personal-injury claims “are to be taken as established,” leaving damages as the only issue to be determined by the jury.[6]
On December 8, 2010, a jury awarded Hayes $5 million against Stevie Woods and Pruitt on her personal-injury claims. Stevie Woods did not appeal the verdict.
Before the trial on Hayes’s fraudulent-transfer claims, the trial court entered an order assessing more sanctions against Stevie Woods because of his continued lack of cooperation. The trial court also determined before trial that 11 deeds had been used to fraudulently transfer 9 parcels of real property from Stevie Woods to Darren, Joni, and Flower Wood, and the trial court set aside those deeds. The order setting aside those deeds further stated that “the issue of any additional real and personal property which may have been fraudulently transferred among the defendants is not disposed of by this Court’s ruling and remains at issue for trial.” The defendants did not challenge the order and do not do so on appeal.
Stevie Woods refused to answer all but the most preliminary questions in his deposition, responding to nearly every question that he was “tak[ing] the Fifth.” As a result, the trial court issued further sanctions against Woods, including finding that Woods was barred from opposing Hayes’s claims or the damages sought and that “[a]ll questions Defendant Stevie Woods refused to respond to during his deposition questioning are hereby taken as established for purposes of this action.” Several of the established facts concerned Woods’s transferring assets to Darren, Joni, and Flower Wood. It also was established that Stevie Woods had not contributed any money to pay for Hayes’s medical expenses or to compensate her for her injuries. The defendants likewise did not challenge this order.
On February 22, 2011, the trial on Hayes’s fraudulent-transfer claims commenced. During the opening statement of Hayes’s counsel, counsel for the defendants objected to Hayes’s counsel’s showing the jury photographs of Hayes’s inju *867 ries. Counsel for Darren, Joni, and Flower Wood stated that “the damage[s] case against Stevie [Woods] is simply not relevant to any issue to be presented here ... it’s just simply not relevant evidence.” The trial court overruled the objection. Later in the opening statement, defendants’ counsel interjected that
“[t]he defendants, Joni Woods [sic], Darren Woods, and Flower Wood Development stipulate that any injuries sustained by Miss Hayes very unfortunately were horrible and that the judgment has already been rendered against Stevie Woods for five million dollars as [Hayes’s counsel] has said. She has hospital and doctor bills [that are] astronomical and we stipulate to all that making all of this not relevant.”
Hayes’s first witness was Officer Clem-mons, who testified about what he had observed at the scene of the explosion on the day it occurred as well as some details about the criminal investigation. Counsel for Darren, Joni, and Flower Wood objected that Officer Clemmons’s testimony was irrelevant to the issue whether the transactions in question were fraudulent. The trial court overruled the objection.
Officer Clemmons testified concerning the condition of the house when he arrived on the scene, and he verified photographs of damage done to the residence. He testified as to Hayes’s condition immediately after the incident, stating that “she was skin — she was, I mean, it was actually falling off of her, her arms.” He stated that Hayes asked him if she was going to die, but that he did not answer her. Instead, he walked away because “out of all I’ve seen in my line of work [her condition] was probably the worst and I couldn’t handle it.” Officer Clemmons also stated that he talked with Stevie Woods the day after the explosion and he told Woods
“about the house exploding, [Hayes] being in the house and talked to him to the point of — he was standing — we were standing right in front of my car and when I started talking to him about [Hayes] being in the house and could possibly die, Jason [Pruitt] gone to the hospital, his — he was shaking and his knees were shaking so bad he had to lean up against my car.”
Hayes next offered video deposition testimony from Dr. Hardin. Counsel for Darren, Joni, and Flower Wood objected that Hardin’s testimony did “not establish any material fact the consequence of which bears on the truth or falsity of any issue to be tried.” The trial court overruled the objection. Dr. Hardin testified as to the extent of Hayes’s injuries, the number and kinds of procedures she had endured, and the extent of her recovery. Dr. Hardin stated that Hayes “sustained] significant injuries that included a major total body surface area burn.” He also identified and discussed photographs of Hayes’s surgical treatment that were admitted into evidence over the objection of counsel.
Hayes’s counsel then played excerpts of Stevie Woods’s video deposition. Facts established against Stevie Woods by his refusal to answer questions included the fact that he owned several rental properties in the Florence area, that multiple parcels of real property had been transferred to Darren and to Joni, but that no money was paid in exchange for those properties, that Stevie Woods had had conversations with Joni concerning the establishment of Flower Wood, that Joni collects the rent from Stevie Woods’s rental properties and passes it on to him, and that Stevie Woods had transferred cash to Darren and Joni following the incident.
Hayes’s counsel next called Darren to testify. Darren testified that currently he lives in the house his father lived in at the *868 time of the incident, that he pays no rent for living, in the house, and that he does not have a job and he does not go to school.
With regard to various financial transactions, Darren testified that he was 16 years old in September 2004 when the explosion occurred and that he did not own any real property at the time. He stated that he was 18 years old in December 2006 when deeds indicate that his father transferred real property to him and to Joni. Darren claimed that he had never bought or sold property and that he was not familiar with the properties listed in the deeds. Darren admitted that his signature appeared on deeds dated in mid 2007 transferring real property from himself and Joni to Flower Wood, but he denied any memory of the transfers. He admitted that he had had a joint bank account with his father, but he stated that he did not write checks, that his father had signing privileges on the account, and that Joni had a durable power of attorney for their father. Darren denied any awareness of $40,000 having been deposited into the joint account. • Though Darren admitted that his signature appeared on a check for $25,000 made out to Margaret Ann Hill for the purchase of real property and that his signature also appeared on the warranty deed for the property, he denied having any knowledge of the transaction or of the subsequent transfer of the same property to Flower Wood. Darren stated that he did not know much about Flower Wood other than that it was organized for tax purposes. He denied knowledge of checks made out to him by the Florence Housing Authority and deposited into his joint account. Darren stated that he assumed his father or Joni must have signed the checks on his behalf.
On cross-examination, Darren testified that his father’s health in 2006 was poor, as demonstrated by the facts that Stevie Woods had diabetes, had had a leg amputated, and had undergone two open-heart surgeries. Darren denied having any knowledge of any deeds, transactions, deposits, or withdrawals done in his name during the period in question. He also denied attempting to hide money to keep it from Hayes.
Hayes’s counsel next called Joni to testify. Joni testified that she has held Stevie Woods’s power of attorney since early 2006 and that from the time of Woods’s conviction on November 8, 2006, she ran the family business. Exactly one month after her father’s conviction and sentence, Joni filed articles of organization for Flower Wood, naming herself as the sole member. Joni admitted that she and Darren did not pay any money to their father for land that was transferred to them following the incident involving Hayes. She also admitted that, when property that had been transferred to them subsequently was transferred to Flower Wood, no money was exchanged. She stated that the reason for the transfers of her father’s property was that he was ill in 2006 and he believed he was going to die and he wanted to pass on his property to his children before that occurred. Joni admitted that her father recovered from his illness but that none of the transferred property has been returned to him. She also admitted that she had been receiving rental income from some of the properties that was being deposited into bank accounts for the benefit of Flower Wood, Darren, and herself. She stated that some of the income from the rental properties she uses for her personal expenses because “this job is my only source of income.” Joni also admitted that she had recently built a new house.
Joni denied knowledge of property transactions about which Hayes’s counsel *869 asked her, stating that everything was a blur at the time the transactions occurred because of her father’s ordeal and the death of her grandmother. One such transaction involved the sale of property by Stevie Woods to H & H Land Company and someone else, in connection with which the property was placed in Darren’s and Joni’s name. She and Darren then deeded the property to Flower Wood, which in turn deeded it to the purchasers. Joni admitted that a portion of the proceeds from that sale was deposited into her personal bank account. Joni then purchased property from Vella Ruth Darby and deeded the property to Flower Wood.
Joni admitted that Stevie Woods had given her and Darren money as well as real property since 2004, but she stated that this was because he was being generous to them. She also claimed that she and Darren worked for their father by serving as caregivers, paying bills, and setting up health insurance because their father could not read or write.
On cross-examination, Joni denied that her father attempted to hide anything from Hayes and testified that she did not try to hide assets from Hayes. She contended that most of the transactions in question occurred as a result of having to pay for Stevie Woods’s legal representation and because Stevie Woods wanted to give his children his property before he died.
The jury then heard testimony from Hayes. Hayes testified about what she remembered of the incident, about her injuries, and her recovery. Defendants’ counsel objected to her testimony and to the admission of more photographs of Hayes’s injuries. The trial court overruled the objections. It was established that Hayes’s medical bills exceeded $1 million. She also testified that she had not received any compensation from the Woods family for her injuries.
At the close of Hayes’s case, the defendants moved for a judgment as a matter of law, which the trial court denied. The defendants then presented further testimony from Darren during which he stated that title to property valued at $477,600 already had been transferred back into his father’s name as a result of the transactions the trial court previously had set aside. Darren also testified that he has no money and that he no longer had a checking account.[7] Following Darren’s testimony, the case was submitted to the jury.
On February 24, 2011, the jury returned a verdict in favor of Hayes and against Darren for violating the AUFTA and assessed damages in the amount of $86,540.49. It found against Joni for violating the AUFTA and for conspiracy to violate the AUFTA and assessed damages in the amount of $437,761.52; it found against Flower Wood for violating the AUFTA and assessed damages in the amount of $32,247.50.
The defendants did not file post-judgment motions. Darren and Joni appeal the verdicts entered against them; Flower Wood has not appealed the verdict entered against it.

II. Standard of Review

Darren and Joni argue on appeal that the judgments against them should be reversed on the ground that the trial court erred in admitting into evidence highly prejudicial photographs, medical records, and testimony concerning Hayes’s injuries *870 and photographs and testimony concerning the explosion.
“ ‘ “The standard applicable to a review of a trial court’s rulings on the admission of evidence is determined by two fundamental principles. The first grants trial judges wide discretion to exclude or to admit evidence.” ’ Mock v. Allen, 783 So.2d 828, 835 (Ala.2000) (quoting Wal-Mart Stores, Inc. v. Thompson, 726 So.2d 651, 655 (Ala.1998)). Despite the latitude afforded the trial court in its evidentiary rulings, a trial court exceeds its discretion where it admits prejudicial evidence that has no probative value. See Powell v. State, 796 So.2d 404, 419 (Ala.Crim.App.1999), aff'd, 796 So.2d 434 (Ala.2001).
“ < secon(j principle ‘is that a judgment cannot be reversed on appeal for an error [in the improper admission of evidence] unless ... it should appear that the error complained of has probably injuriously affected substantial rights of the parties.’ ” ’ Mock, 783 So.2d at 835 (quoting Wal-Mart Stores, 726 So.2d at 655, quoting in turn Atkins v. Lee, 603 So.2d 937, 941 (Ala.1992)). See also Ala. R.App. P. 45. ‘The burden of establishing that an erroneous ruling was prejudicial is on the appellant.’ Preferred Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165, 167 (Ala.1991).”
Middleton v. Lightfoot, 885 So.2d 111, 113— 14 (Ala.2003) (emphasis omitted).[8]

III. Analysis

The essence of Darren and Joni’s argument is as follows:
“The trial court permitted presentation of extensive graphic evidence of Hayes’s physical injuries caused not by any conveyance of property, but by a fire in which [Darren and Joni] indisputably played no role. This evidence was irrelevant to the issues on trial, had no probative value in determining whether there had been a violation of the Alabama Fraudulent Transfers Act by Appellants Joni Wood and Darren Woods, and served solely to inflame the passions of the jury to the point that it was impossible for Joni Wood and Darren Woods to receive a fair trial.”
Thus, Darren and Joni contend- that evidence pertaining to the circumstances and extent of Hayes’s injuries was irrelevant and prejudicial and should have been excluded. The sufficiency of Darren’s and Joni’s objections to this evidence is not in question in this appeal.
In deciding whether to admit evidence in the face of objections on these grounds, “the trial court must determine whether the evidence is relevant and probative, Rule 401, Ala. R. Evid., and whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, Rule 403, Ala. R, Evid.” Woods v. State, 13 So.3d 1, 19 (Ala.Crim.App.2007).
*871 “ ‘ “Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.’ Ala. R. Evid. 401. Under this rule, ‘[e]vi-dence is to be admitted if it possesses “any tendency,” in logic or experience, to lead to the fact or inference for which it is offered.’ Advisory Committee’s Notes to Rule 401.”
Middleton, 885 So.2d at 115. See also Taylor v. General Motors Corp., 707 So.2d 198, 203 (Ala.1997) (stating that “Evidence is relevant when it has some tendency to shed light on the inquiry at issue”). Thus, the first question we must address is whether the circumstances and extent of Hayes’s injuries are “fact[s] that [are] of consequence to the determination of the action.” 885 So.2d at 115.
The trial court gave the following charge to the jury, without objection, concerning Hayes’s burden to prove a violation of the AUFTA:
“[Hayes] claims to be a creditor of the debtor Stevie Woods and claims that the debtor fraudulently transferred an asset or interest in an asset when the debtor transferred money and real property to the transferees Joni Woods and Darren Woods. [Hayes] has the burden of proving to your reasonable satisfaction the following elements:
“1. [Hayes] is a creditor of the debtor Stevie Woods.
“2. That the debtor transferred an asset or an interest in an asset without receiving a reasonably equivalent value in exchange for the transfer.
“3. That the debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.”
The charge was taken from Alabama Pattern Jury Instruction: Civil 18.21, and it is consistent with the latter of two types of constructive fraud described in Ala. Code 1975, § 8-9A-4(c).[9] The Alabama Comment to this Code section states that “[s]ubseetion (c) of this section list two types of fraud, which are commonly identified as constructive fraud.” Ala.Code 1975, § 8-9A-4, Comment 3.
This Court has explained:
“An existing creditor seeking to set aside a conveyance may do so because of either actual fraud or constructive fraud. Actual fraud denotes the actual mental operation of intending to defeat or delay the rights of the creditor. On the other hand, constructive fraud is based on facts and circumstances which courts have said constitute legal fraud, regardless of actual intent. The term ‘constructive fraud’ is generally used to refer to those instances where a grantor, indebted at the time, conveys property without receiving valuable consideration.”
Granberry v. Johnson, 491 So.2d 926, 928-29 (Ala.1986).
*872 Darren and Joni contend that the manner in which Hayes was injured and the gruesome nature of her injuries are irrelevant to establishing the elements of a constructive fraudulent transfer. Hayes counters that the evidence was relevant to establishing that she was a creditor of Stevie Woods (the first element) and to demonstrating that Woods knew that the debt exceeded his ability to pay it (the third element).
Concerning the first element, the fact that Stevie Woods was a debtor to Hayes was not in issue at trial. A $5 million verdict in favor of Hayes and against Woods concerning her personal injuries had been entered before the trial of Hayes’s claims against Darren and Joni relating to the alleged fraudulent transfers. Stevie Woods did not appeal that verdict, and the jury was informed of the verdict in the opening statements of counsel for both parties.[10] Indeed, during opening statements counsel for the defendants stipulated to the judgment against Stevie Woods and to the fact that Hayes had incurred over $1 million in medical bills. Evidence of the full extent and gruesome nature of Hayes’s injuries was not necessary to establishing an element of the claim that was not in dispute.
As mentioned, Hayes also contends in these appeals, as she did before the trial court, that “the nature and extent of [Hayes’s] injuries are fully probative for showing what was or should have been in Stevie Woods’ mind in the weeks and months following the explosion.” In other words, Hayes contends that the evidence was relevant to demonstrate the third element of a constructive fraudulent transfer — that Stevie Woods knew or should have known that the debt he owed Hayes would be beyond his ability to pay because of the magnitude of her injuries. Thus, according to Hayes, the jury needed to be shown pictures of Hayes’s injuries and to be told about the ordeal of her recovery because the evidence had a bearing on the magnitude of the debt Stevie Woods owed Hayes.
The problem with this argument is that no testimony solicited from Stevie Woods, Darren, or Joni indicated that Stevie Woods knew, or should have known, the full extent and gruesome nature of Hayes’s injuries at the time he incurred the debt or at any time before he started transferring assets to his children. In his deposition, Stevie Woods did not testify concerning his knowledge of Hayes’s condition, and, in fact, he was not asked any questions on that subject. Likewise, neither Darren nor Joni was asked whether their father was aware of the nature and extent of Hayes’s injuries at the time the transfers were made. The only testimony provided at trial on this subject was elicited from Officer Clemmons, who related to Stevie Woods the day after the explosion that Hayes had been in the house when it exploded and that she had sustained life-threatening injuries. It would have been reasonable for the jury to infer from that testimony that Stevie Woods knew or should have known that he had incurred a debt to Hayes based on the fact that he had been told that she had sustained life-threatening injuries. There is no evidence to indicate, however, that Stevie Woods knew or should have known of the extent of Hayes’s injuries as depicted by the evi *873 dence presented at trial or that the debt he might incur as a result of those injuries would be beyond his ability to pay because of the nature of those injuries or the kind of medical care that would be required to recover from such injuries.
As noted above, “relevant evidence” must concern a “fact that is of consequence to the determination of the action.” Rule 401, Ala. R. Evid. The creditor-debtor relationship between Hayes and Stevie Woods was not in question, and Hayes presented no evidence indicating that Stevie Woods knew the full extent and gruesome nature of Hayes’s injuries at the time he made the transfers in question. Consequently, the testimony and documentary evidence detailing the same could not assist in establishing the third element of the constructive-fraudulent-transfer claims.
For good reason, the trial court ordered that the trial of Hayes’s claims solely against Stevie Woods based on personal injuries she sustained in the explosion proceed separately from the trial of Hayes’s claims alleging fraudulent transfers against Stevie Woods, Darren, Joni, and Flower Wood. It did so following a motion from Darren, Joni, and Flower Wood in which those defendants expressed grave concerns about the possibility of evidence regarding Hayes’s injuries “in-flam[ing]” the jury against them. The trial court’s order bifurcating the trial of Hayes’s claims constituted an implicit acknowledgment that evidence regarding the explosion and Hayes’s resulting injuries could only distract from a trial on the claims alleging fraudulent transfers. Despite taking the measure of ordering separate trials on those claims, the trial court then allowed Hayes to present much of the evidence concerning the explosion, her injuries, and her recovery that she had presented in the first trial of her personal-injury claims against Stevie Woods.
“‘Trial judges have wide discretion to exclude or admit evidence even of minor probative value on issues litigated in the cases. The test is that the evidence must only shed light on the main inquiry, and not withdraw attention from the main inquiry. Cherry v. Hill, 283 Ala. 74, 214 So.2d 427 (1968); see also, C. Gamble, McElroy’s Alabama Evidence § 21.01(6) (3rd ed.1977).’ ”
Scarber v. Kelsoe, 594 So.2d 68, 70 (Ala.1992) (quoting Ryan v. Acuff, 435 So.2d 1244, 1247 (Ala.1983) (emphasis added)). The evidence in question drew attention away from the pertinent inquiry — whether the real-property transactions were fraudulent transfers. Instead, the evidence emphasized Hayes’s pain and suffering. See also, e.g., Middleton, 885 So.2d at 113 (observing that “[djespite the latitude afforded the trial court in its evidentiary rulings, a trial court exceeds its discretion where it admits prejudicial evidence that has no probative value” (emphasis omitted)).
As we noted in our statement of the standard of review, an erroneous ruling as to the admission of evidence by a trial court constitutes reversible error only if the error has probably injuriously affected substantial rights of the appealing parties. In this instance, the prejudice to Darren and Joni resulting from the admission of photographs of the crime scene and Hayes’s gruesome condition following the explosion as well as testimony detailing the extent of Hayes’s injuries and the manner in which those injuries radically affected her life is obvious. The evidence had “ ‘an undue tendency to suggest decision on an improper basis.’ ” Gipson v. Younes, 724 So.2d 530, 532 (Ala.Civ.App.1998) (quoting Rule 403, Fed.R.Evid., Advisory Committee Notes 1972). Therefore, the trial *874 court’s admission of the evidence constitutes reversible error.

IV. Conclusion

The trial court’s admission of evidence that was entirely irrelevant to Hayes’s fraudulent-transfer claims and that was highly prejudicial to Darren and Joni warrants reversal of the jury verdicts against Darren and Joni. Accordingly, the judgment of the trial court is reversed, and the cause is remanded for a new trial consistent with this opinion.
1100750 — REVERSED AND REMANDED.
1100751 — REVERSED AND REMANDED.
MALONE, C.J., and WOODALL, BOLIN, and MAIN, JJ., concur.

. Although both Darren and Joni are children of Stevie Woods, the legal spelling of Joni’s last name is "Wood” with no final "s."

. In the proceedings in the Court of Criminal Appeals arising out of this incident, Woods is referred to as "Steve” Woods.

. According to the facts related by the Court of Criminal Appeals in its unpublished memorandum addressing the direct appeal of Stevie Woods from his conviction for first-degree arson arising out of this incident, Stevie Woods paid Pruitt $3,000 to destroy the house because Woods believed that Amy Hayes, Kar-rie's mother, had stolen money from him. Woods v. State (No. CR-06-1150), 64 So.3d 1150 (Ala.Crim.App.2009) (table).

. Initially, Amy Hayes and Jerry Parnell, the owner of the house, filed individual claims in the same complaint, but those claims were not pursued at trial. During the course of the litigation, Karrie Hayes reached the age of majority, and, as a result, she pursued the action through trial on her own behalf.

. Hayes also named Stevie Woods’s sister, Patsy Ann Scott, and his other daughter, Kay-lee Woods, as defendants, but these defendants later were dismissed from the action by motions filed by Hayes.

. Pruitt had failed to answer the complaint, and a default judgment was entered against him. On December 1, 2010, he filed a motion stating that he did not contest the allegations against him and that he agreed to be bound jointly and severally by any jury verdict as to damages entered against Stevie Woods.

. We note that Darren previously testified that at one time he had had a joint checking account with his father.

. Darren and Joni also argue on appeal that the trial court erred in failing to grant their motion for a judgment as a matter of law based on the ground of insufficiency of the evidence and in failing to order a new trial on the ground that the jury’s verdict was against the great weight of the evidence. As noted, however, none of the defendants filed a post-judgment motion. Such a motion, among other things, is necessary to preserve for appeal an alleged error by the trial court in not entering a judgment as a matter of law based on insufficiency of the evidence. See King Mines Resort, Inc. v. Malachi Min. & Minerals, Inc., 518 So.2d 714, 716 (Ala.1987). Likewise, a postjudgment motion is necessary to preserve for appeal an argument that a new trial was warranted based on the great weight of the evidence. Id. at 717. Thus, Darren and Joni have waived their argument that the trial court erred in failing to enter a judgment as a matter of law or in failing to order a new trial.

. Section 8-9A-4(c) provides:
"(c) A transfer made by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made, if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor:
"(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
“(2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.”

. In her brief, Hayes states that the $5 million verdict against Stevie Woods “was still potentially subject to appeal” at the time of the trial against Darren and Joni. This is not the case. Because the $5 million verdict was entered December 8, 2010, it had to be appealed by January 19, 2011. The trial against Darren and Joni did not occur until February 22, 2011.